COOK *v.* HARRISON.

Opinion delivered December 2, 1929.

*V. D. Willis,* for appellant.

*Woody Murray,* for appellee.

HUMPHREYS, J. This is an appeal from the judgment of the circuit court in Boone County, finding appellants guilty of violating ordinance No. 108 of the city of Harrison, and imposing a fine upon each of them for the violation. Appellants were convicted and fined under §§ 13 and 31 of said ordinance. The title, enacting clause and the sections referred to are as follows:

"Ordinance No. 108—An ordinance to better regulate licenses in the city of Harrison. Be it ordained by the council of the city of Harrison: That it shall be unlawful for any person or persons to engage in, exercise or pursue any of the following avocations or businesses without first having obtained and paid for a license therefor from the proper city officials, the amount of which license is hereby fixed as follows, to-wit. * * * Section 13. For each book, picture or picture frame peddler, five dollars per month, or twenty-five dollars per year. * * *

"Section 31. Whoever shall engage in any business for which a license is required by this ordinance, without first obtaining and paying for same as above required, shall be deemed guilty of misdemeanor, and upon conviction shall be fined in any sum not exceeding $300."

The record reflects that appellants traveled from house to house within the corporate limits of Harrison, immediately before their arrest, carrying, selling and delivering books in sets of five each, published by the International Bible Students' Association. The books were shipped to appellants by said Bible Students' Associa-

tion in cartons, containing twelve sets, at a cost to appellants of fifty-six cents a set. They sold the books for $1.98 a set. The names of the several books are "Deliverance," "Reconciliation," "Recreation," "Government," and the "Harp of God." Each book contains 368 pages, and is bound substantially. They are interpretations of the Scriptures according to the beliefs of said association. Those selling or distributing the books were and are regarded and treated by said association as ministers of the Gospel. Appellants traveled over the territory assigned to them in an automobile, slept in a tent which they carried with them, and did their own cooking. The profit they derived from the sales of the books did not entirely cover their living expenses. They had been engaged in selling these books for about five years, and supplemented the deficiency in their living expenses with money derived from other sources. They testified that their purpose was, not to realize a financial remuneration, but to disseminate the teachings of the association purely and solely from religious motives; that their hope for reward was the salvation that comes from endurance to the end.

Appellants contend for a reversal of the judgment upon the ground that the facts detailed did not constitute them peddlers and hawkers within the meaning of the ordinance, but reflected that they were colporteurs at the time they sold and delivered the books in the city of Harrison. It is argued that the words, "peddlers and hawkers," as used in § 5 of article 16 of the Constitution of the State, § 7618, C. & M. Digest, and the ordinance under which they were convicted, have relation to an avocation or business. Even so, appellants were engaged in the business of selling and delivering books of a religious character when arrested. It is true, as argued, that the business in which they were engaged did not produce enough for them to live upon, but many vocations are followed and businesses prosecuted at a loss, and they are no less businesses or vocations on that account. It is also true, as argued, that appellants were prompted to

sell and deliver the books on account of religious convictions or from religious motives, but the convictions or motives inspiring their acts are not controlling in determining whether the acts constituted them peddlers or hawkers. The purpose of the ordinance was to require all parties engaged in the business of peddling or hawking to pay a license. It is true, perhaps, as argued, that appellants were colporteurs, but this did not exempt them from the penalties of the ordinance. A "colporteur," as defined by Webster, is a hawker; specifically, one who distributes or sells religious tracts or books.

"Peddlers and hawkers," as used in our Constitution and statutes, have been defined by § 9793 of C. & M. Digest as follows: "Whoever shall engage in the business of selling goods, wares or merchandise of any description, other than articles grown, produced or manufactured by the seller himself or by those in his employ, by going from house to house or place to place, either by land or water, to sell the same, is declared to be a peddler or hawker."

This court, in the case of *Conway* v. *Waddell*, 90 Ark. 127, 118 S. W. 398, followed the statutory definition, and defined a peddler as one "who goes from place to place and from house to house carrying for sale and exposing for sale the goods, wares and merchandise he carries."

The gist of appellants' contention for a reversal of the judgment is that the ordinance does not forbid the hawking or peddling of religious tracts or books, especially if the parties distributing them are prompted by religious motives. We find no such exception in the ordinance. No distinction appears in the ordinance between the character of books distributed or the motives prompting the distribution thereof. The Constitution of the State authorizes the imposition of a tax or license on hawkers or peddlers, irrespective of the kind of goods, wares or merchandise distributed by them, and there is no inhibition in the Constitution of the United States against the imposition of a tax or license upon them. The imposition of such a tax is not an abridgment of religious

freedom or an infringement upon the constitutional guaranty of religious liberty.

No error appearing, the judgment is affirmed.